# United States District Court
## for the Northern District of Oklahoma

Case No. 25-cv-117-JDR-JFJ

GELON LUVERN BARNES, JR.,

                                                                                    *Plaintiff*,

versus

MAYES EMERGENCY SERVICES TRUST AUTHORITY,

                                                                                    *Defendant*.

## OPINION AND ORDER

Plaintiff Gelon Barnes was injured while working as an EMT for his former employer Defendant Mayes Emergency Services Trust Authority (MESTA). He was fired soon after he sought leave to recuperate from his injury. Dkt. 15-1 at 4-7.[1] Mr. Barnes sued MESTA in state court for failure to make reasonable accommodations, and MESTA promptly removed the case. Dkts. 2, 2-1. Mr. Barnes now moves to amend his complaint to add two new Defendants, Alan Davis and Brad Reed, and multiple new causes of action. Dkts. 15, 15-1. MESTA argues that Mr. Barnes's proposed amended complaint violates Rule 8 of the Federal Rules of Civil Procedure and that any amendment would be futile. Dkt. 16. For the reasons set forth below, the Court finds that Mr. Barnes's proposed amended complaint does not violate Rule 8, but the Court also finds that several of Mr. Barnes's claims would be futile as they are susceptible to a dismissal under Rule 12(b)(6). Accordingly, the Court grants in part and denies in part his motion to amend. Mr. Barnes

---

[1] All citations use CM/ECF pagination.

No. 25-cv-117

is directed to file an amended complaint without the futile causes of action by March 16, 2026.

I

The Court turns first to MESTA's argument that the proposed amended complaint fails to comply with Rule 8, which requires a complaint to include "a short and plain statement" of the claim for relief. Dkt. 16 at 4. MESTA characterizes Mr. Barnes's proposed amended complaint as "not short, nor . . . plain and concise." *Id.* MESTA likens Mr. Barnes's amended complaint to those in *Abdelsamed v. United States*, 13 F. App'x 883, 884 (10th Cir. 2001) (a case addressing a seventy-six-page complaint with "nonsensical" claims which the court found "incomprehensible") and *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (a case addressing an eighty-three-page complaint that "neither identifie[d] a concrete legal theory nor target[ed] a particular defendant"). These cases are readily distinguishable. Mr. Barnes's proposed complaint is only fourteen pages long—far shorter than those at issue in *Mann* and *Abdelsamed*. Dkt. 15-1. And his amended complaint is reasonably organized and includes five separate defined counts with multiple sub-counts. *Id.*

Mr. Barnes's proposed amended complaint is sufficiently concise and clear for this Court to make out his claims. The Court will not deny Mr. Barnes's motion on Rule 8 grounds.

II

The Court next considers MESTA's argument that Mr. Barnes's amendment should be denied as futile. Mr. Barnes's motion is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which permits a party to file an amended complaint with either leave of the Court or the opposing party's written consent. Although MESTA does not consent to Mr. Barnes's proposed amendment, Rule 15(a)(2) states that the Court "should freely give leave [to amend] when justice so requires." But Rule 15(a)(2) does not require

No. 25-cv-117

the Court to accept all amendments. It is within the Court's discretion to deny Mr. Barnes leave to amend based on, among other reasons, "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile when the amended complaint "would be subject to dismissal" under Rule 12(b)(6). *Mountain View Pharmacy v. Abbott Lab'ys*, 630 F.2d 1383, 1389 (10th Cir. 1980).

To address whether the amended complaint would be subject to dismissal, the Court must determine whether Mr. Barnes's complaint sets forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In other words, the Court must determine whether, taking all well-pleaded allegations as true, the complaint provides a "reason to believe that [Mr. Barnes] has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

MESTA argues that Mr. Barnes's proposed amended complaint does not "make clear exactly *who* is alleged to have done *what* to *whom*" and does not "provide [MESTA, Mr. Davis, and Mr. Reed] with fair notice as to the basis of the claims against [them]." Dkt. 16 at 3 (quoting *Robbins*, 519 F.3d at 1250) (emphasis in original). MESTA challenges Mr. Barnes's claims against Mr. Davis, his Family Medical Leave Act claim, his tortious interference with contract and business relationship claims, and his Oklahoma Open Records Act claim. Dkt. 16. The Court addresses each in turn.

A

MESTA first argues that Mr. Barnes's theories of liability against Mr. Davis are precluded by Okla. Stat. tit. 60, § 179, which states that "[n]o trustee or beneficiary shall be charged personally with any liability whatsoever by

No. 25-cv-117

reason of any act . . . committed . . . in the performance of such trust" and that, instead, the liability falls upon the trust itself. Dkt. 16 at 4-5. Mr. Barnes did not respond to this argument in his reply. Dkt. 17.

MESTA is a public trust. Dkt. 15-1 at 2-3. Mr. Davis is a member of MESTA's board of trustees and is thus covered by the plain language of Okla. Stat. tit. 60, § 179. *Id.* On its own, this bars Mr. Barnes's claim for relief against Mr. Davis. But even if it did not, the Court notes that Mr. Barnes's proposed amended complaint only pleads a single fact concerning Mr. Davis—that Mr. Davis signed the letter terminating Mr. Barnes's employment. *Id.* at 7. This lone allegation does not permit the Court to infer that Mr. Davis acted outside of his capacity as a MESTA trustee or was otherwise liable to Mr. Barnes under any cognizable legal theory. The amended complaint fails to state a claim against Mr. Davis, and Mr. Barnes's claims against him are futile.

B

MESTA next argues that Mr. Barnes does not state a claim for relief under the FMLA because Mr. Barnes never advised MESTA or any MESTA employees of his intent to take FMLA leave. Dkt. 16 at 6-8. Mr. Barnes disagrees, arguing that a plaintiff need not request leave, advise his employer of his intent to use FMLA leave, or indeed cite the FMLA at all to establish a right to relief. Dkt. 17 at 8-9.

"If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001). "The FMLA . . . does not require a covered employee to specifically ask for FMLA benefits [and] [a]n employee need not expressly assert rights under the FMLA or even mention the FMLA." *Id.* Under *Tate*, the relevant inquiry is not whether Mr. Barnes made a request for FMLA benefits but whether MESTA was aware that Mr. Barnes "might qualify" for those

4

No. 25-cv-117

benefits. *Id.*[2] Although the Tenth Circuit has not conclusively ruled that supervisors are subject to FMLA claims, other courts within the Tenth Circuit have found that the majority of circuit courts have concluded that individual supervisors may be held liable as "employers" under the FMLA. *Miles v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 347 F. Supp. 3d 626, 630 (D. Kan. 2018); *see also Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1284 (D.N.M. 2010) (collecting cases). A court must consider if the supervisor in question "has the power to hire and fire employees, supervises and controls employee work schedules, determines the rate and method of payment, and maintains employee records." *Miles*, 347 F. Supp. 3d at 630. In effect, the question is whether the supervisor "possessed the power to control the worker in question." *Id.*

In his proposed amended complaint, Mr. Barnes alleges he "sustained a partial torn rotator cuff" while lifting a patient and informed MESTA of his injury a few hours later by filling out an incident report and telling his supervisor. Dkt. 15-1 at 4. He allegedly told MESTA employees, including Mr. Reed, that he intended to file a worker's compensation claim, then went to an urgent care facility that contacted MESTA about his injury and restricted him from "lifting, pulling or pushing" for two weeks. *Id.* at 5. Mr. Barnes also alleges he emailed those restrictions and his medical instructions to MESTA. *Id.* Mr. Reed communicated with Mr. Barnes about the "timeline of when [Mr. Barnes would] be able to return to work" and stated that Mr. Barnes "may be gone a few months for workers comp." *Id.* at 6.

Based on these allegations, MESTA and Mr. Reed were on notice that Mr. Barnes suffered a workplace injury and would need time to recuperate.

---

[2] MESTA argues, without citation, that "merely alerting your employer of an on-the-job injury does not indicate FMLA leave is at issue." Dkt. 16 at 7. This argument is precluded by the Tenth Circuit's holding in *Tate*. Alerting an employer of an on-the-job injury and active work restrictions is sufficient to put an employer "on notice that the employee might qualify for FMLA benefits." *Tate*, 268 F.3d at 997.

5

No. 25-cv-117

MESTA argues that Mr. Barnes intended to use his sick leave instead of invoking the FMLA but cites no legal argument for why this is relevant to its duty to inform Mr. Barnes of his rights under the FMLA, only arguments that it could require him to use his sick leave before his FMLA benefits began. Dkt. 16 at 7. *Tate* places the burden on the employer to "notify the employee that FMLA coverage might apply." 268 F.3d at 997. Mr. Barnes alleges that MESTA and Mr. Reed failed to do so.

But Mr. Barnes has not alleged facts sufficient to indicate that Mr. Reed "had the power to hire and fire [him] . . . determine[d] the rate and method of [Mr. Barnes's] payment, and maintain[ed] employee records" or "possessed the power to control" Mr. Barnes. *Miles*, 347 F. Supp. 3d at 630. At most, Mr. Barnes states that Mr. Reed had the title of "director," but notes that another person, Erick Dickover, was "executive director" and that a third, Jason Gilstrap, was responsible for disciplining Mr. Barnes. Dkt. 15-1 at 5-6. Mr. Barnes does not make clear which individuals in his complaint actually had the power to hire, fire, and otherwise control him, and so has not stated a claim that Mr. Reed was a covered employer liable under the FMLA. But Mr. Barnes has stated a claim for MESTA's alleged FMLA violations, and his proposed amendment is not futile on this count.[3]

### C

MESTA next argues that Mr. Barnes's claims for malicious interference with contract and tortious interference with a business relationship

---

[3] Mr. Barnes also asserts his FMLA claim against Mr. Davis. Although Oklahoma law cannot immunize Mr. Davis from a federal cause of action, Mr. Barnes has only levied a single allegation against him—that he signed the termination letter. Dkt. 15-1 at 7. On its own, this action does not implicate the FMLA or show that Mr. Davis was on notice that Mr. Barnes might qualify for FMLA benefits. Mr. Barnes's FMLA proposed amendment against Mr. Davis for violating the FMLA is futile.

No. 25-cv-117

against Mr. Reed and Mr. Davis[4] are barred for two reasons: first, it argues that these claims are subject to the Oklahoma Governmental Tort Claims Act and, second, that Mr. Reed and Mr. Davis are not third parties to Mr. Barnes's employment contract and cannot be held liable on a malicious or tortious interference theory.

MESTA argues that the Oklahoma Governmental Tort Claims Act precludes Mr. Barnes's claims against either Mr. Reed or Mr. Davis because it grants immunity to all government employees "acting within the scope of their employment." Okla. Stat. tit. 51, § 152.1. Mr. Barnes argues that the OGTCA does not apply because Mr. Reed and Mr. Davis "acted maliciously and intentionally," and therefore outside the scope of their employment and thus outside the protection of the OGTCA. Dkt. 17 at 4.

Torts for "malicious interference" or "tortious interference" with contract or business relationship "cannot be committed within the scope of employment by an employee of a political subdivision" such as MESTA. *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 15, 212 P.3d 1158, 1166. As a result, Mr. Barnes's claims can proceed if—and only if—he can plead facts to state a viable claim for malicious and tortious interference.

To do so, Mr. Barnes must allege sufficient facts that if true would show "(i) that Plaintiff had a contractual right [or business relationship] with which [Mr. Reed and Mr. Davis] interfered; (ii) that the interference was malicious and wrongful, and neither justified, privileged nor excusable; and (iii) damage was proximately sustained as a result of the complained interference." *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1194–95 (W.D. Okla. 2019). Mr. Barnes must allege some "facts that

---

[4] As discussed in section II–A, *supra*, Mr. Davis is not liable under any of Mr. Barnes's state-law theories pursuant to Okla. Stat. tit. 60, § 179; however, the Court will assume that Mr. Davis could be liable for purposes of analyzing Mr. Barnes's claims on this count.

No. 25-cv-117

would support an inference that [Mr. Davis or Mr. Reed were] acting outside of the scope of their employment," because an employee or agent will not "generally be held liable" simply for carrying out his job duties. *Bostic v. City of Jenks*, No. 19-cv-0541-CVE-JFJ, 2020 WL 3065915, at *13 (N.D. Okla. June 9, 2020).

Mr. Barnes did not allege facts against Mr. Davis sufficient to state a claim for malicious or tortious interference. The *only* concrete fact Mr. Barnes pleads concerning Mr. Davis is that he signed the termination letter. Dkt. 15-1 at 7. Signing termination notices is clearly within the scope of Mr. Davis's role as a member of MESTA's board and, without more factual allegations, cannot form the basis for a malicious or tortious interference claim.

Mr. Barnes has more to allege against Mr. Reed, who allegedly "told [Mr. Barnes] that he was getting written up," requested additional information from Mr. Barnes about the incident after receiving information from Mr. Barnes's urgent care visit, discussed the amount of time Mr. Barnes would be gone for recovery, and assured Mr. Barnes that "you have not been fired" before sending Mr. Barnes a termination letter. *Id.* at 4-7. These allegations, while more substantial than those against Mr. Davis, likewise do not support an inference that Mr. Reed was acting outside the scope of his employment. To the contrary, Mr. Reed's alleged actions are well within the purview of management at any institution and do not permit the court to infer that Mr. Reed was acting maliciously or in any way that would permit the Court to conclude that he tortiously or maliciously interfered with Mr. Barnes's employment contract.

Mr. Barnes argues that cases like *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 18, 91 P.3d 673, 679, support his claim that Mr. Davis and Mr. Reed could be liable for interfering with his employment contract and working relationship with MESTA. But *Wilson* required a showing of "bad faith" and actions "contrary to the interest of the employer," to the point where the

8

alleged interferer was "gross[ly] reckless[]" in the termination of the employee. *Id.*, ¶ 19, 91 P.3d 673, 679. The Court in *Wilson* also held that a party's actions "cannot be characterized as malicious or in bad faith based only on the fact of the interference with the contract."[5] *Id.* Mr. Barnes has not alleged facts to show maliciousness or bad faith on the part of Mr. Davis or Mr. Reed.[6]

Mr. Barnes's allegations of tortious interference against Mr. Davis and Mr. Reed are futile because they fail to state a viable claim and because the OGTCA precludes relief against Mr. Davis and Mr. Reed on the facts alleged.

### D

Last, MESTA argues that Mr. Barnes's claim that MESTA violated the Oklahoma Open Records Act is false, and points to what it alleges would be exhibits to Mr. Barnes's amended complaint as evidence for its argument. Dkt. 16 at 11-12. Mr. Barnes's response to this argument is unclear, but he argues that MESTA has not yet complied with the Open Records Act. Dkt. 17 at 9-10. Determining MESTA's compliance with the Open Records Act is a fact-bound analysis requiring consideration of multiple documents. The

---

[5] Mr. Barnes also relies on the Oklahoma Supreme Court's opinion in *Martin v. Johnson*, 1998 OK 127, ¶ 33, 975 P.2d 889, 896, which permitted a plaintiff to amend her complaint to state a claim of tortious interference in her employment contract by her supervisor when she alleged that her termination was caused by her resistance to her supervisor's harassment. But *Martin* specifically noted that "characterizing an employee's conduct as contrary to the interests of the employer cannot be based merely upon the employee's interference with the contract." *Id.* And although the court in *Martin* did not explicitly rule that an employee's harassment is not in the employer's interest, Mr. Barnes has not pleaded facts sufficient to create an inference that Mr. Davis's or Mr. Reed's actions relating to Mr. Barnes's termination were similarly contrary to MESTA's interests.

[6] Mr. Barnes's allegations against Mr. Reed consist of statements that Mr. Reed (1) participated in a meeting where Mr. Barnes was written up, (2) requested additional information about Mr. Barnes's health condition and recovery plan, (3) informed Mr. Barnes that he had not yet been fired, and (4) later emailed the termination letter bearing Mr. Davis's signature. Dkt. 15-1 at 4-7. At most, these allegations permit the Court to infer that there was indecision or confusion about MESTA's continued employment of Mr. Barnes on Mr. Reed's part—not that he was some way acting contrary to MESTA's interests or with malice towards Mr. Barnes.

No. 25-cv-117

Court declines to find that Mr. Barnes's claim is futile as a matter of law when resolution of the issue requires determinations of fact.

IV

For the reasons given above, the Court concludes that Mr. Barnes's proposed amended complaint states claims for relief against MESTA under the FMLA, the ADA[7], and the Open Records Act, but fails to state a claim with respect to any of the causes of action asserted against Mr. Davis or Mr. Reed. Mr. Barnes's motion [Dkt. 15] is thus granted in part and denied in part. Mr. Barnes will be permitted to file an amended complaint stating these causes of action—and only these causes of action—against MESTA. *See Jensen v. W. Jordan City*, No. 2:12-cv-00736-DAK, 2015 WL 2384048, at *5 (D. Utah May 19, 2015) (directing plaintiff to file an amended complaint containing only those amendments permitted by the Court); *see also Ofori v. Fleming*, No. 7:20-cv-00344, 2022 WL 3584904, at *21 (W.D. Va. Aug. 22, 2022) (granting in part and denying in part a motion to amend based on futility of some alleged claims); *Manes v. JPMorgan Chase Bank, N.A.*, No. 20-cv-11059 (VEC), 2022 WL 671631, at *9 (S.D.N.Y. Mar. 7, 2022) (same). Mr. Barnes must file this amended complaint by March 16, 2026. Failure to do so will preclude Mr. Barnes from alleging his new causes of action against MESTA. MESTA will have fourteen days after receiving service of the amended complaint to file a responsive pleading. Fed. R. Civ. P. 15(a)(3).

---

[7] Mr. Barnes's ADA claim is present in both his original complaint (where it is directed against MESTA) and proposed amended complaint, and the Defendants do not object to its inclusion in his proposed amended complaint. Dkt. 2-1 at 1; Dkt. 15-1 at 9; Dkt. 16 at 2. But Mr. Barnes's proposed amended complaint does not specify which defendants he claims violated the ADA. Dkt. 15-1 at 9. As discussed in section II-A, *supra*, Mr. Barnes has not alleged facts sufficient to state a claim against Mr. Davis on any cognizable legal theory. And supervisors cannot be held liable under the ADA, so Mr. Reed is likewise immune from this claim. *Timmons v. United Parcel Serv.*, No. 21-1243-JWB, 2022 WL 2191794, at *2 (D. Kan. June 16, 2022) (citing *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999)). Insofar as Mr. Barnes's ADA claim against MESTA is not futile, any ADA claim he purports to levy against either Mr. Davis or Mr. Reed would be.

No. 25-cv-117

The Court recognizes that this is Mr. Barnes's first attempt to amend this case since arriving in federal court. And district courts regularly give plaintiffs a second chance to amend their complaints. *See, e.g., Ruel v. First Illinois Bancorp, Inc.*, No. 22-cv-228, 2023 WL 279737, at *3 (S.D. Ill. Jan. 18, 2023) (denying leave to amend only after a plaintiff had two opportunities to state his claims); *S. Jersey Gas Co. v. Mueller Co.*, No. CIV. 09-4194 RBK/JS, 2011 WL 5873028, at *9 (D.N.J. Nov. 18, 2011) (holding "since this is the first time the merits of plaintiff's CFA claim have been addressed, the Court will grant plaintiff another opportunity to cure its pleading deficiencies"); *Barron v. Martel*, No. CIV S-10-1567 WBS, 2011 WL 4829300, at *2 (E.D. Cal. Oct. 11, 2011) (granting a plaintiff two opportunities to amend, and no more). If Mr. Barnes wishes to amend his complaint to include claims against Mr. Davis and Mr. Reed, he may file a motion for leave to amend with a new proposed amended complaint that cures the deficiencies identified in this opinion. This motion for leave and second proposed amended complaint must be made separately from the new complaint the Court directs him to file with his claims against MESTA. Mr. Barnes is warned, however, that he will only have one additional opportunity to plead claims against Mr. Davis and Mr. Reed. If he pleads further, futile claims against them, the Court will deny him further leave to amend with prejudice.

DATED this 2d day of March 2026.

JOHN D. RUSSELL
*United States District Judge*